***E-Filed 4/6/12***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MELVIN REID,

        Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

_____/

No. C 10-04279 RS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Melvin Reid filed a motion for summary judgment for judicial review of a final decision by defendant, Social Security Commissioner Michael Astrue, denying his request for disability benefits under the Social Security Act (SSA). 42 U.S.C. § 405(g). This action is before the Court on cross-motions for summary judgment, and Reid's alternative motion to remand for further proceedings before another Administrative Law Judge (ALJ). Having considered the briefs, the administrative record, as well as the applicable legal authority, defendant's motion for summary judgment must be granted for the reasons explained below.

## II. FACTUAL & PROCEDURAL BACKGROUND

On May 12, 2006, Reid filed an application for Supplemental Security Income (SSI), alleging the onset of disability as of January 31, 1992. His claim was denied initially, and again upon reconsideration. He then filed a timely request for an administrative hearing, and the ALJ found that Reid was not disabled. The Appeals Council denied Reid's appeal, and he timely requested review by this Court. Upon review, the Court found legal error in the ALJ's opinion and remanded the case for further proceedings. *See Reid v. Astrue*, No. 08-05249. After a rehearing, at which Reid was represented by counsel, the ALJ again reached the conclusion that Reid is not entitled to SSI benefits under the law. In so finding, the ALJ accorded substantial weight to the opinions of medical expert and psychiatrist Miriam Sherman, M.D., consultative examining psychologist Ahmed El-Sokkary, Psy.D., and non-examining State agency psychiatrists G. Norbeck, M.D., and Danilo Lucila, M.D, but only limited weight to the testimony of Reid's former and current treating physicians.

In his written ruling, the ALJ first noted that Reid has not engaged in any gainful activity since May 12, 2006, the date he filed the SSI application under review. (Tr. 355). The ALJ then determined that Reid had severe impairments in the form of anxiety disorder and substance addiction, under the criteria set forth in § 12.06 and § 12.09, respectively, of 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 355). The ALJ concluded that these impairments would have "more than minimal effect on the claimant's ability to perform the basic requirements of work." (Tr. 355). The ALJ arrived at this conclusion based on a detailed survey of Reid's medical history. (Tr. 356-367). He went on to conclude, however, that if Reid's substance use were to remain in remission, his remaining limitations, though severe, would not, singly or in combination, meet the impairment criteria set forth in § 404, Subpart P, Appendix 1. (Tr. 367). As a result, the ALJ found that Reid's "residual functional capacity" (RFC) would permit light work, consisting of simple repetitive tasks with no public contact, but with regular contact with coworkers and supervisors; and, that Reid, absent substance abuse, could achieve some range of bodily movement, including ambulatory mobility with the use of a cane. (Tr. 367-68).

Although there is some dispute as to the extent of Reid's work experience in 2001, and the credibility issues that flow therefrom, Reid does not appear to dispute the ALJ's finding that he had no recent employment constituting "substantial gainful activity." (Tr. 368). According to testimony offered by a vocational expert (VE), and credited by the ALJ, Reid would, substance-free, have significant employment opportunities available to him, given his age, education, employment experience and assessed RFC. (Tr. 369). The ALJ therefore concluded that Reid is "not disabled," within the applicable legal framework. Finally, the ALJ also found, contrary to Reid's position, that his substance use was a contributing factor material to his claimed disability. The ALJ therefore determined that he did not qualify as disabled under Title XVI of the SSA. Reid opted to file a civil action challenging the decision before this Court rather than seek review from the Appeals Council. 42 U.S.C. §§ 405(g), 1383(c).

### III. LEGAL STANDARD

The SSA provides SSI benefits for people who have contributed to the Social Security system and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). To determine whether a particular claimant suffers from such a disability within the meaning of the Act, the ALJ must adopt a five-step analysis. *See* 20 C.F.R. § 404.1520. In the first step, the ALJ determines whether the claimant is engaged in "substantial gainful activity," thereby precluding SSI benefits. 20 C.F.R. § 404.1520(a)(4)(i). If not, the ALJ proceeds to the second step to assess whether the claimant suffers from severe impairment which "which significantly limits [his or her] physical or mental ability to do basic work activities." *Id.* at § 404.1520(a)(4)(ii). If so, the ALJ compares the claimant's impairment to the list of impairments deemed sufficiently severe in § 404, Subpart P, Appendix 1. If any of the claimant's impairments, alone or in combination, meet or equal the severity of a listed condition, then at the third step, the claimant is deemed disabled and awarded benefits. *Id.* at § 404.1520(a)(4)(iii). If the claimant's level of impairment does not so qualify, the ALJ must determine whether the claimant has sufficient RFC to perform past work despite his or her limitations. *Id.* at § 404.1520(a)(4)(iv). If not, the ALJ must show, at the final stage, that the claimant can perform other employment that is significantly available, consistent with the claimant's

1  RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant
2  carries the burden to demonstrate severe impairment and an inability to perform past work in steps
3  one through four, whereas at step five, the burden shifts to the agency to show the availability of
4  other work opportunities.[1] *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995).

5  Where the use of drugs or alcohol is involved, the ALJ must first proceed to perform the
6  foregoing analysis without segregating the effect of substance abuse on the claimant's health. If the
7  ALJ finds, as a result, that the claimant is not disabled under the five-step framework, the claimant
8  is not entitled to benefits and the inquiry ends. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th
9  Cir. 2001). If the ALJ finds the claimant is disabled, and there exists "medical evidence of drug
10 addiction or alcoholism," then the ALJ must determine whether the claimant "would still [be found]
11 disabled if [he or she] stopped using alcohol or drugs." *Id.* (citing 20 C.F.R. §§ 404.1535, 416.935).

12 This Court has jurisdiction to review a final decision of the Commissioner of Social Security
13 and to enter judgment affirming, modifying, or reversing such decision with or without remanding
14 the cause for a rehearing. *See* 42 U.S.C. § 405(g). The Commissioner's decision will not be
15 disturbed if it is supported by substantial evidence in the record and the proper legal standards were
16 followed. *Bayliss v. Barhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Moncada v. Chater*, 60 F.3d
17 521, 523 (9th Cir. 1995). In this context, substantial evidence means such relevant evidence as a
18 reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S.
19 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial
20 evidence requires more than a mere scintilla, but less than a preponderance of evidence. *Young v.*
21 *Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990). To determine whether substantial evidence supports
22 the Commissioner's decision, this Court reviews the administrative record as a whole, considering
23 adverse as well as supporting evidence. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1992).
24 Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must

---

[1] Where an applicant's prior claim under the same title of the Act was subject to an unfavorable final decision by an ALJ or the Appeals Council, a presumption of continuing nondisability applies to a subsequent claim arising from an unadjudicated period, unless the applicant shows "changed circumstances." Acquiescence Ruling 97-4(9); *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

NO. C 10-04279
ORDER

(Left margin: **United States District Court** / For the Northern District of California)

be upheld. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

## IV. DISCUSSION

### A. Mental Impairment

Reid advances several lines of attack on the ALJ's opinion. First, he submits the ALJ's evaluation of his mental impairments was legally deficient. In reliance on the opinion of Dr. Sherman, the ALJ found that in "regard to concentration, persistence, or pace, the claimant would have moderate difficulties if the substance use was stopped," and concluded that Reid would therefore be capable of non-public, simple and repetitive tasks. (Tr. 367-368). Reid maintains the ALJ erred by failing to: (1) explain why Dr. Sherman's testimony was adopted on this issue, (2) limit the RFC appropriately given the assessed limitations, and (3) provide an otherwise adequately reasoned analysis.

Specifically, Reid contends the ALJ erred by omitting any discussion of his ability to function "independently, effectively, and on a sustained basis." Subsection (c)(2) of 20 C.F.R. § 416.920a states that the agency:

> … will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function.

Reid finds further fault with the ALJ's failure to discuss several pieces of evidence favorable to him. At the hearing, Reid's counsel posed a hypothetical to the testifying VE on the premise that Reid's "moderate" limitations as to "concentration, persistence or pace" manifested themselves as a tendency to be "off task" some 20% of the time, as compared to the average worker. The ALJ stated on the record that limitations are rated according to severity not frequency, but permitted the question. In reply, the VE opined that such an individual could not successfully perform unskilled labor. (Tr. 476). Reid insists that while the ALJ was entitled to agree or disagree as to whether a 20% reduction is equivalent to moderate limitation, the ALJ was at least obliged to discuss his

No. C 10-04279
ORDER

5

ability to function "on a *sustained* basis." 20 C.F.R. § 416.920a(c)(2). Likewise, Reid challenges the ALJ's failure to discuss a statement offered by Reid's brother averring that Reid is incapable of managing his money, paying bills, cooking for himself, shopping, and handling other household chores. (Tr. 585-87). Reid argues the ALJ's failure to "give enough consideration" to this evidence, which tends to suggest he is in fact incapable of performing simple, repetitive tasks, was error. (Pl.'s Reply to Def.'s Mot. for Summ. J. 4).

The Commissioner generally maintains the ALJ's decision was supported by substantial evidence, and may not be overturned. He argues the ALJ was not required to state specific findings as to Reid's ability to function "independently, effectively, and on a sustained basis," because consideration of those factors merely provides the basis for the ALJ's ultimate determination concerning the claimant's limitations. 20 C.F.R. § 416.920a(c)(2). Relying on *Magallenes v. Bowen*, the Commissioner also insists the ALJ's opinion implies a finding Reid could function "independently, effectively, and on a sustained basis." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (reviewing court may draw "specific and legitimate inferences from the ALJ's opinion" without requiring recitation of "magic words"). As Reid notes, however, *Magallanes* is not directly relevant to the issue debated here. There, the ALJ was not required to state a specific rejection of an expert's opinion as to the onset of the claimant's disability because his opinion otherwise "summarized the facts and conflicting evidence in detailed and thorough fashion," and adequately stated his interpretation and findings. *Id.*

This case presents a somewhat closer question. As Reid correctly points out, the ALJ adopted Dr. Sherman's opinion on the question of his mental limitations, almost word for word, and to the exclusion of other evidence, without explaining why.[2] (Tr. 367). There is no dispute, moreover, that Dr. Sherman's opinion did not include any specific findings concerning Reid's ability to function in a sustained manner. (Tr. 459). That said, Dr. Sherman's conclusions were not without evidentiary support. She found that, absent substance abuse, Reid had moderate difficulties

---

[2] The ALJ noted, but failed to discuss, the testimony of state agency examiners that Reid suffers from "moderate restrictions in some areas, including in detailed tasks and in attention, concentration, and *sustaining a normal workday*." (Tr. 359) (emphasis added).

in social functioning and maintaining concentration, and thus would be capable of simple repetitive tasks without public contact. She based this opinion on her review of Reid's medical records and testimony. Although Dr. Sherman did not examine Reid, the Commissioner submits that her testimony nonetheless constitutes "substantial evidence" because it is supported by the testimony of Drs. Norbeck and Lucila. (Tr. 459, 759, 900-01). Though neither Dr. Norbeck nor Dr. Lucila examined Reid, Dr. El-Sokkary did. His conclusions were also in agreement with Dr. Sherman's opinion. He found that Reid would have the required concentration, persistence or pace to do simple, repetitive tasks. (Tr. 358, 665). Thus, Dr. Sherman's conclusions were adequately supported by Dr. El-Sokkary's testimony, and the ALJ's failure to discuss Reid's mental limitations in greater detail does not warrant relief. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (ALJ may rely on non-treating, non-examining physician's opinion if "corroborated by the opinions of other examining and consulting physicians, which in turn were based on independent clinical findings").

The ALJ's failure to address the hypothetical posited by Reid's counsel at the hearing also did not constitute error. Though the ALJ and the Commissioner may be correct that limitations are rated for "severity," the percentage-based characterization of moderate mental limitations offered by Reid's counsel was not necessarily incorrect. *See, e.g., Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003) (ALJ failed to account for claimant's "*frequent* deficiencies of concentration, persistence, or pace"). That said, a hypothetical posed to a VE must be supported by "substantial evidence," *Richardson*, 402 U.S. at 401, and here Reid is unable to point to any evidence in the record to substantiate the premise that he is distracted some 20% of the time. Moreover, as Reid candidly acknowledges, the ALJ could have properly concluded that a 20% diminution in ability to remain "on task" amounted to something more than moderate limitations on "concentration, persistence or pace." (Pl.'s Mot. for Summ. J. 8). As a result, the ALJ's failure to discuss this particular issue in greater detail does not undermine his ultimate conclusions, or detract from the evidence supporting them.

Reid goes on to argue that, even if these limitations were adequately established, the ALJ's RFC determination was not restricted accordingly. As the Ninth Circuit has explained, however, "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174 (citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001)). In particular, a finding that the claimant is capable of simple, routine work adequately captures moderate restrictions as to concentration, persistence or pace. *Id.* It follows that the ALJ did not err in translating Reid's limitations into the assessed RFC.

Finally, Reid contends that the ALJ failed to afford non-medical evidence sufficient weight in arriving at the RFC. As Reid acknowledges, however, the ALJ cited to, and summarized, the statement offered by his brother. (Tr. 491). Reid questions whether the ALJ gave sufficient consideration to this evidence, or adequately explained his reasons for rejecting it. The ALJ's opinion, however, states that he found that "the claimant's statements, and those of his brother Curtis Reid, concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they exist absent substance abuse, as the claimant asserts." (Tr. 498). While Reid is correct that the ALJ must base his decision on all of the relevant evidence in the record, he cannot go so far as to say the ALJ failed to consider this evidence. 20 C.F.R. § 416.945(a)(1); Social Security Ruling 96-5p (requiring "consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"). Rather, it is apparent the ALJ did consider this evidence, and deemed it not credible. Under the applicable standard of review, the ALJ's determination must be upheld if a reasonable mind would accept the evidence as sufficiently supportive. *Richardson*, 402 U.S. at 401. Given the record here, the ALJ's decision meets that test. As a result, Reid has not identified a proper legal or evidentiary basis to displace the ALJ's finding as to his mental impairments.

B. Contact with Others

Reid also challenges the ALJ's determination that he "can sustain regular contacts with coworkers and the general public," as unsupported by substantial evidence. Reid appears to have

misread the ALJ's opinion: the RFC limited contact to supervisors and coworkers, and specifically found him incapable of contact with the general public. (Tr. 368). The ALJ arrived at this conclusion based on the testimony of Dr. Sherman and, apparently, his own deductions: "[b]ecause [Reid] has been very able in interacting with his multiple medical and administrative providers over the years, and in responding to his attorney and requests for information in connection with his claims, the undersigned concludes that the claimant can sustain regular contact with coworkers and supervisors." (Tr. 368). Reid argues that his relatively limited interactions with his counsel and health care providers do not support the ALJ's inference that he is capable of continuous interactions with coworkers over the course of a forty-hour work week. The Commissioner has not directly responded to this contention, but on balance, Reid has the better part of the argument. There is no apparent authority for the ALJ's position that a claimant's ability to interact with his legal counsel and care providers on a semi-regular basis implies that he is capable of interacting with co-workers for the work week. The ALJ also neglected to cite any evidence in the record to support this supposition. The ALJ's determination of this issue was therefore erroneous.

The question then becomes whether or not the remaining evidence in the record provides substantial support for the ALJ's decision. As the ALJ noted, Dr. Sherman testified Reid had moderate restrictions in social functioning, and could maintain contact with coworkers and supervisors, but not the general public. (Tr. 459-60). "Because [Reid] continues to have an anxiety disorder," the ALJ adopted Dr. Sherman's analysis on this issue as well. (Tr. 459-60). Dr. El-Sokkary, on the other hand, based on his examination of Reid, found that "he would have some difficulties in appropriately interacting with supervisors and co-workers." (Tr. 358). Dr. Norbeck also found moderate limitations in Reid's ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes, and in maintaining socially appropriate behavior. (Tr. 760). The Commissioner argues that Dr. Norbeck's testimony supports Dr. Sherman's conclusion, and by extension, the ALJ's finding.[3] Although that inference seems

---

[3] As the Commissioner stresses, however, Dr. Norbeck did not specifically find that these limitations would preclude contact with coworkers. (Tr. 759-61).

NO. C 10-04279
ORDER

9

debatable, the ALJ, in any case, made no such finding. He purported to rely on Dr. Sherman, and Reid's persistent anxiety disorder, without reference to the findings of either Dr. Norbeck or Dr. El-Sokkary.

The ALJ's failure to recognize Dr. El-Sokkary's countervailing opinion, let alone discuss why he accorded it less weight than his own and Dr. Sherman's, is, admittedly, somewhat troubling. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct"). As the Ninth Circuit has repeatedly explained, "greater weight is accorded to the opinion of an examining physician than a non-examining physician." *Andrews v. Shalala*, 53 F.3d at 1040-41 (quoting *Magallenes*, 881 F.2d at 751). Thus, "when it is an *examining* physician's opinion that the ALJ has rejected in reliance on the testimony of a nonexamining advisor, reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." 53 F.3d at 1041 (emphasis in original). Like the Ninth Circuit's other cases, *Andrews* expressly requires the ALJ to set forth "specific, legitimate reasons" for rejecting an examining expert's opinion in favor of those of a non-examining expert. *Id. See also Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) ("opinion of an examining doctor, even if contradicted by the opinion of another [nonexamining] doctor, can only be rejected for specific and legitimate reasons that are supported by the record").

Ultimately, however, the ALJ's opinion passes muster because it is not clear that Dr. El-Sokkary's opinion is truly contrary to Dr. Sherman's. Dr. El-Sokkary found that Reid would experience "some difficulties" interacting with coworkers and supervisors, but he did not find that Reid could not associate with others at work. It is thus possible the ALJ found no inconsistency between the two. Assuming that is the case, there is in fact sufficient evidence in the record to sustain the ALJ's determination. Accordingly, Reid's challenge on this ground must also be denied.

C. Plaintiff's Credibility

Finally, Reid contests the ALJ's finding that he lacked credibility as a witness. The ALJ was required to make a specific credibility finding as to Reid, and did so. Social Security Ruling 96-7;

No. C 10-04279
ORDER

10

*Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Specifically, the ALJ found that internal inconsistencies within Reid's own statements, and the absence of independent, supporting evidence on certain issues, undermined his credibility. (Tr. 364). For example, Reid repeatedly told his health care providers that he did not use drugs and alcohol, statements that were contradicted by toxicology tests. Reid also made inconsistent statements to care providers about injuries he allegedly sustained in multiple automobile accidents, without any substantiating, objective evidence. The ALJ found further inconsistencies in Reid's account of his employment history. Finally, the ALJ discredited Reid's testimony concerning his health issues and impairments due to a lack of objective medical evidence, as well as Reid's own inconsistent conduct.[4]

      Reid challenges the ALJ's credibility determination to the extent it rests on evidence related to the alleged car accidents and his employment history. As the ALJ noted, Reid has claimed to a number of care providers that he suffered injuries in connection with three car accidents, including periodic hallucinations and flashbacks. Other than Reid's own account of his symptoms, the only objective evidence of these accidents in the record is a medical report from 1992. The ALJ interpreted that report as omitting any indication of "significant injuries" and therefore discredited Reid's testimony to the contrary. (Tr. 364, 943-44). Reid notes that the report stated a diagnosis of "[s]prained neck, back, shoulders, chest walls, bilateral hips, bilateral sacroiliac joints, bilateral knee," (Tr. 943), and argues that it was error for the ALJ to discount his testimony as a result. Reid says nothing, however, about the other two alleged car accidents, or the ALJ's conclusion that these claims were not credible because Reid inconsistently reported the dates of each. (Tr. 364) Thus, even assuming for argument's sake that the ALJ should not have doubted his credibility based on the 1992 accident, the ALJ still had reason to suspect Reid's testimony on the basis of the other two alleged accidents. Similarly, Reid also insists that the ALJ misinterpreted a "Work History Report" he filed in connection with his SSI claim, (Tr. 575, 579), and therefore wrongly discredited his testimony. Again, even assuming Reid is correct, there was sufficient other evidence in the record

---

[4] In particular, the ALJ found that Reid's mobility was not consistent with the impairments that he claimed, and that his repeated failure to appear at appointments with health care providers undermined his allegations concerning the severity of his pain and other impairments.

No. C 10-04279
ORDER

11

to support the ALJ's finding that Reid lacked credibility as a witness, including the numerous discrepancies in Reid's account of his substance abuse. *Andrews*, 53 F.3d at 1039. As a result, Reid has not identified any deficiency in the ALJ's credibility finding.

## V. CONCLUSION

Having found the ALJ's decision is supported by substantial evidence and that the proper legal standards were applied, the Commissioner's motion for summary judgment must be granted. Reid's cross-motion for summary judgment, or in the alternative for remand, must be denied.

IT IS SO ORDERED.

Dated: 4/5/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE